**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN KREISCHER, HENRY EPPS, WILLIAM BOX, JASON YENNA, THOMAS NELSON, BRIAN BUCKMAN, CURLEY CONLEY, and JAMES GALBREATH, | ) ) ) ) ) ) | CASE NO: 18-cv-4068 |
| On behalf of themselves and all others similarly-situated | ) ) ) | JUDGE: **JURY DEMAND** |
| Plaintiffs | ) ) ) | |
| v. | ) ) | |
| GALFAB ACQUISITIONS, LLC, WASTEBUILT ENVIRONMENTAL SOLUTIONS, LLC, GALFAB, LLC, GALFAB HOLDINGS, LLC, and BEN SCHEINER | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

Plaintiffs John Kreischer, Henry Epps, Jason Yenna, Thomas Nelson, Curley Conley, and James Galbreath, Brian Buckman (collectively "Plaintiffs"), by their attorneys Saul, Ewing, Arnstein & Lehr and The Spitz Law Firm, LLC, bring this action on behalf of themselves and all those similarly-situated against Defendants Galfab Acquisitions, LLC, Wastebuilt Environmental Solutions, LLC, Galfab, LLC, Galfab Holdings, LLC, and Ben Scheiner, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et seq. Plaintiffs' FLSA claims are asserted as a collective action pursuant to 29 U.S.C. § 216(b). The following allegations are based upon information and belief, or personal knowledge as to Plaintiffs' own conduct and the conduct and acts of others.

1

## PARTIES
### (Plaintiffs)

1. John Kreischer is an adult individual residing at 518 Stamper Drive, Winamac, Indiana. Kreischer has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b).[1]

2. Henry Epps is an adult individual residing at 517 S. Huddleston Road, Winamac, Indiana. Epps has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b).[2]

3. William Box is an adult individual residing at 6585 E. Maplebend Dr., Monticello, Indiana. Box has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b).[3]

4. Jason Yenna is an adult individual residing at 1631 S. 1200 W, Francesville, Indiana. Yenna has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b).[4]

5. Curley Conley is an adult individual residing at 504 W. Montgomery Street, Francesville, Indiana. Conley has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b).[5]

6. James Galbreath is an adult individual residing at 118 W. Huddleston Street, Winamac, Indiana. Galbreath has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b).[6]

7. Brian Buckman is an adult individual residing at 2698 N. 175 E., Winamac, Indiana. Buckman has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b).[7]

---

[1] Exhibit "A."
[2] Exhibit "B."
[3] Exhibit "C."
[4] Exhibit "D."
[5] Exhibit "E."
[6] Exhibit "F."
[7] Exhibit "G."

8. Thomas Nelson is an adult individual residing in Knoxville, Indiana. Nelson has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b).[8]

9. The putative FLSA class, pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 219 of the Complaint.

### (Corporate Defendants)

10. Galfab Acquisitions, LLC, is a Delaware Limited Liability Company which, at all times material to the Complaint prior to approximately September of 2017, owned and/or operated a manufacturing plant located at 612 West Eleventh Street, Winamac, Indiana ("Winamac Plant") and at 4020 S 15th Avenue, Phoenix, Arizona ("Phoenix Plant")

11. At all times referenced herein, Galfab Acquisitions, LLC's principal place of business was located at 5400 Stepp Drive, Summit, Illinois.

12. Wastebuilt Environmental Solutions, LLC is a Delaware Limited Liability Company which, at all times material to the Complaint, owned Galfab Acquisitions, LLC, and was the parent company of Galfab Acquisitions, LLC.

13. At all times referenced herein, Wastebuilt's principal place of business was located at 5400 Stepp Drive, Summit, Illinois.

14. During all times material to the Complaint prior to approximately September of 2017, Wastebuilt Environmental Solutions, LLC wholly owned Galfab Acquisitions, LLC, and solely controlled and directed its operations.

15. Between approximately 2013 and September of 2017, Galfab Acquisitions, LLC held itself out as "Galfab, a Wastebuilt Company."

---

[8] Nelson's consent to sue form will be filed in the next 30 days.

16. During all times material to the Complaint prior to approximately September of 2017, Galfab Acquisitions, LLC exercised control over the employment of Plaintiffs and those similarly-situated.

17. During all times material to the Complaint prior to approximately September of 2017, Galfab Acquisitions, LLC had the power to hire and fire Plaintiffs and those similarly-situated.

18. During all times material to the Complaint prior to approximately September of 2017, Galfab Acquisitions, LLC supervised the schedules of Plaintiffs and those similarly-situated.

19. During all times material to the Complaint prior to approximately September of 2017, Galfab Acquisitions, LLC determined how Plaintiffs and those similarly-situated would be paid.

20. During all times material to the Complaint prior to approximately September of 2017, Galfab Acquisitions, LLC maintained employment records for Plaintiffs and those similarly-situated.

21. During all times material to the Complaint prior to approximately September of 2017, Wastebuilt Environmental Solutions, LLC exercised control over the employment of Plaintiffs and those similarly-situated.

22. During all times material to the Complaint prior to approximately September of 2017, Wastebuilt Environmental Solutions, LLC had the power to hire and fire Plaintiffs and those similarly-situated.

23. During all times material to the Complaint prior to approximately September of 2017, Wastebuilt Environmental Solutions, LLC supervised the schedules of Plaintiffs and those similarly-situated.

24. During all times material to the Complaint prior to approximately September of 2017, Wastebuilt Environmental Solutions, LLC determined how Plaintiffs and those similarly-situated would be paid.

25. During all times material to the Complaint prior to approximately September of 2017, Wastebuilt Environmental Solutions, LLC maintained employment records for Plaintiffs and those similarly-situated.

26. Galfab Acquisitions, LLC and Wastebuilt Environmental Solutions, LLC are hereinafter referred to jointly as the "Wastebuilt Entities."

27. During all times material to the Complaint prior to approximately September of 2017, Wastebuilt Defendants jointly employed Plaintiffs and those similarly-situated as to constitute an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28. At all times material to the Complaint prior to approximately September of 2017, the Wastebuilt Entities had a common business purpose, a unified operation, and common ownership, and formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and form a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

29. In or around September of 2017, Wastebuilt divested itself of Galfab Acquisitions, LLC through the creation of an Employee Stock Ownership Plan structured and funded by Mosaic Capital Partners ("ESOP Buyout").

30. At the time of the ESOP Buyout, Mosaic Capital Partners formed two new Galfab entities, "Galfab, LLC" and "Galfab Holdings, LLC."

31. Galfab LLC is a Delaware limited liability corporation with its principal place of business located at 7820 Graphics Drive, Tinley Park, Illinois, 60477.

32. Galfab Holdings, LLC is a Delaware limited liability corporation with its principal place of business located at 7820 Graphics Drive, Tinley Park, Illinois, 60477.

33. Galfab, LLC and Galfab Holdings, LLC continued operating the Winamac Plant and the Phoenix Plant subsequent to the ESOP Buyout.

34. Since approximately September of 2017, Galfab, LLC and Galfab Holdings, LLC have exercised control over the employment of Plaintiffs and those similarly-situated.

35. Since approximately September of 2017, Galfab, LLC and Galfab Holdings, LLC have had the power to hire and fire Plaintiffs and those similarly-situated.

36. Since approximately September of 2017, Galfab, LLC and Galfab Holdings, LLC have supervised the schedules of Plaintiffs and those similarly-situated.

37. Since approximately September of 2017, Galfab, LLC and Galfab Holdings, LLC have determined how Plaintiffs and those similarly-situated would be paid.

38. Since approximately September of 2017, Galfab, LLC and Galfab Holdings, LLC have maintained employment records for Plaintiffs and those similarly-situated

39. Since approximately September of 2017, Galfab, LLC and Galfab Holdings, LLC have jointly employed Plaintiffs and members of the putative opt-in class as to constitute an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

40. Galfab, LLC and Galfab Holdings, LLC have a common business purpose, a unified operation, and common ownership, and form a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and form a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all

times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

41. For the purposes of the Complaint, Galfab, LLC and Galfab Holdings, LLC are hereinafter referred to jointly as the "New Galfab Defendants."

42. New Galfab Defendants are successors to the Wastebuilt for the purposes of liability under the FLSA.

(<b><u>Individual Defendants</u></b>)

43. From August of 2014 through January of 2016, Scheiner served as the General Plant Manager for Wastebuilt Defendants at the Winamac plant.

44. In or around January of 2016, Scheiner became the Director of Manufacturing, Operations and Supply Chain Leader for Wastebuilt, and was responsible for overseeing both the Winamac Plant and the Phoenix Plant.

45. As the Plant Manager of the Winamac Plant, and subsequently as the Director of Manufacturing, Operations and Supply Chain Leader for Wastebuilt Defendants, Scheiner supervised and/or controlled Plaintiffs and the putative class' employment with the Wastebuilt Defendants, controlled the day to day operations of the Wastebuilt Defendants, to include their compensation policies and practices, and acted directly or indirectly in the interest of the Wastebuilt Defendants in relation to their employees, and was an employer within the meaning of section 3(d) of the FLSA.

46. In or around September of 2017, Scheiner became Vice President of the New Galfab Defendants.

47. As the Vice President of the New Galfab Defendants, Scheiner supervises and/or controls Plaintiffs and the putative class' employment with the New Galfab Defendants, controls the day to day operations of the New Galfab Defendants, to include their compensation policies and practices, and acts directly or indirectly in the interest of the New Galfab Defendants in relation to their employees, and is an employer within the meaning of section 3(d) of the FLSA.

## JURISDICTION AND VENUE

48. This Court has federal question jurisdiction over this action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

49. This Court has personal jurisdiction over Galfab Acquisitions, LLC because at all times material to the allegations contained herein, it conducted substantial business in this District and had sufficient minimum contacts within this District, to include directing the work of Plaintiffs and those similarly-situated.

50. This Court has personal jurisdiction over Wastebuilt Environmental Solutions, LLC because at all times material to the allegations contained herein, it conducted substantial business in this District and had sufficient minimum contacts within this District, to include directing the work of Plaintiffs and those similarly-situated.

51. This Court has personal jurisdiction over Galfab, LLC because at all times material to the allegations contained herein, it conducted substantial business in this District and had sufficient minimum contacts within this District, to include directing the work of Plaintiffs and those similarly-situated.

52. This Court has personal jurisdiction over Galfab Holdings, LLC because at all times material to the allegations contained herein, it conducted substantial business in this District and had sufficient minimum contacts within this District, to include directing the work of Plaintiffs and those similarly-situated.

53. This Court has personal jurisdiction over Scheiner because at all times relevant to the claims against the Wastebuilt Defendants, he was a resident of Illinois and he maintained control, oversight, and direction over the operation of The Wastebuilt Defendants, including their employment practices.

54. Venue is proper in this forum pursuant to 28 U.S.C. § 1391, because at all times relevant hereto, Defendants are and always have been responsible for the acts alleged herein, a substantial portion of the practices complained of herein occurred in this District, and Defendants have received substantial compensation as a result of doing business in this District. Moreover, at all times material to the allegations contained herein, Defendants conducted substantial business in the State of Illinois

## **FACTS COMMON TO THE COLLECTIVE**

### **(FLSA Violations Prior To January Of 2018)**

55. At all times referenced herein, Wastebuilt Defendants were in the business of manufacturing and selling products commonly used in the waste and recycling industry, such as dumpsters, hoist, compactors, and containers.

56. Between January of 2013 and approximately September of 2017, Wastebuilt Defendants employed hundreds of laborers paid on a piece rate at Galfab's Indiana Plant and Phoenix Plant to build the products sold by Wastebuilt Defendants ("Piece Rate Employees").

57. Plaintiffs and those similarly-situated are and/or were Piece Rate Employees during the applicable statute of limitations period, through the present.

58. Piece Rate Employees generally worked a nine-and-a-half-hour day, with half an hour automatically deducted for lunch, five days a week.

59. Thus, Piece Rate Employees regularly worked a scheduled 45-hour workweek ("Scheduled Hours").

60. At times during the applicable statute of limitations period, Piece Rate Employees would be called upon to work beyond their Scheduled Hours when necessary, to include working late, coming in early, and working on Saturdays.

61. Piece Rate Employees reported their time via a time punch.

62. At all times referenced herein, Piece Rate Employees were paid a piece rate for the products they built.

63. At times, Piece Rate Employees would run out of parts or supplies, the shop would be slow, or need cleaning; Piece Rate Employees would be paid an hourly rate for this work when it needed to be performed ("Non-Production Work").

64. Piece Rate Employees were also paid hourly when they attended mandatory safety meetings or other meetings.

65. Piece Rate Employees submitted "time slips" for each product they built; for example, if a Piece Rate Employee spent six-hours building a dumpster, two of which were spent waiting on parts, the Piece Rate Employee would report four hours of production time and two hours of Non-Production Time on the time slip they submitted.

66. At all times relevant to the Complaint, Wastebuilt Defendants would balk if a Piece Rate Employee reported too much Non-Production Time and would threaten these employees with discipline if they did not alter their time slips to reduce said Non-Production Time.

67. Wastebuilt Defendants pressured Piece Rate Employees to reduce the Non-Production Time reported in order to reduce labor costs.

68. At all times referenced herein prior to January of 2018, Wastebuilt Defendants did not pay Piece Rate Employees overtime – at all – for time worked over 40 hours in a workweek.

69. Rather than paying Piece Rate Employees overtime, Wastebuilt Defendants simply paid these employees their applicable piece rate or hourly Non-Production Work rate for time worked over 40 hours in a week.

70. Samples of Plaintiffs' paystubs illustrating these practices are attached hereto as Exhibits H, I, and J.

71. For example, during the week of August 12, 2017, Plaintiff John Kreischer worked nearly 60 hours; however, Kreischer was only paid $12.50 per hour for "hourly work" and $1,431.00 for piece rate work (Exhibit H).

72. Kreischer was not paid overtime despite the fact that he worked more than 40 hours during the week of August 12, 2017.

73. During the time period between November 5, 2017 and November 18, 2017, Plaintiff Henry Epps worked more than 80 hours; however, Epps was only paid his piece rate ($1,275.20) and $12.50 per hour for a total of 4.5 hours (Exhibit I).

74. Epps was not paid overtime despite the fact that he worked more than 40 hours per week during both weeks of the November 5, 2017 - November 18, 2017 time period.

75. During the time period between December 3, 2017 and December 16, 2017, Plaintiff Curley Conley worked more than 80 hours; however, Conley was only paid his piece rate ($1,118.14) and $12.50 per hour for a total of 20 hours (Exhibit J).

76. Conley was not paid overtime despite the fact that he worked more than 40 hours per week during both weeks of the December 3, 2017 - December 16, 2017 time period.

77. Plaintiffs regularly complained to management for Wastebuilt Defendants about not being paid overtime.

78. For example, in or around fall of 2014, Kreischer complained to Scheiner about not being paid overtime; Scheiner responded by scolding Kreischer, telling Kreischer that Kreischer was not "an expert" on the legal requirements for overtime, and by telling Kreischer that if he was not satisfied with how he was being paid, he could "walk out the door."

79. In or around June of 2016, Kreischer left his employment with Wastebuilt Defendants.

80. Kreischer became employed by Wastebuilt Defendants again in or around November of 2016.

81. Upon returning to Galfab, Kreischer again asked Scheiner if Wastebuilt Defendants planned to start paying overtime; Scheiner responded by telling Kreischer it was none of his business.

82. In early 2017, Kreischer was discussing OSHA and time sheets with his direct supervisor, Curt Mustard, when Kreischer mentioned that OSHA regulations could be found online by using the popular Google search engine.

83. During Kreischer's conversation with Mustard, the subject of the FLSA and overtime came up, and Kreischer pointed out that Piece Rate Employees are entitled to overtime.

84. Kreischer backed up his claim that Piece Rate Employees are entitled to overtime by showing Mustard a legal blog he found using Google concerning the subject.

85. Subsequently, Mustard called Scheiner over to discuss what Kreischer had found on Google.

86. In response to being confronted with Kreischer's Google research, Scheiner angrily told Kreischer that Kreischer was not a lawyer and did not know what he was talking about.

87. Yenna complained to his direct supervisor, Brian Thomas and Wastebuilt Defendants' human resources department about not being paid overtime, but nothing was done.

88. On one or more occasions, Epps questioned his pay to members of Wastebuilt Defendants' management, specifically complaining about the lack of overtime pay.

89. Wastebuilt Defendants management' responded to Epps' complaints by assuring him that he was, in fact, being paid overtime, and that he just did not see it in his checks because of the method in which Wastebuilt Defendants were allegedly calculating Epps' overtime pay.

90. A true and accurate copy of Epps' paystubs from May of 2017 through December of 2017 pay stubs are attached hereto as Exhibit K.

91. A review of Epps 2017 paystubs demonstrates that Wastebuilt Defendants misled Epps and that Epps was never actually paid overtime in 2017.

92. Wastebuilt Defendants intentionally misled Epps in order to avoid paying overtime.

93. Throughout 2015, 2016, and 2017, Wastebuilt Defendants occasionally held "piece rate meetings" with its Piece Rate Employees.

94. Scheiner would typically attend the piece rate meetings.

95. During several piece rate meetings that occurred in 2016 and 2017, several Piece Rate Employees questioned why they were not paid overtime.

96. During a safety meeting that occurred in or around October of 2017, a member of Wastebuilt Defendants' management (name unknown) responded to the ongoing overtime complaints of Piece Work Employees by stating that Wastebuilt Defendants were not going to pay "piece

rate and a half," it was never going to happen, that is the way it is and that Piece Work Employees should just accept it.

97. Wastebuilt Defendants' unlawful pay practices, as described in paragraphs 53 - 94 above, continued until January of 2018.

98. Despite their knowledge of their obligations under the FLSA to pay employees the proper wage for all hours worked, to include overtime, Wastebuilt Defendants and Scheiner willfully and recklessly refused to pay Plaintiffs and those similarly-situated overtime.

99. Wastebuilt Defendants and Scheiner's violations of the FLSA were knowingly and willfully committed with the intended purpose of reducing Wastebuilt Defendants' labor cost as much as possible.

100. Wastebuilt Defendants and Scheiner lack a good faith or reasonable justification for having failed to pay Plaintiffs or those similarly-situated overtime for all time worked in excess of forty hours per week.

**(Ongoing FLSA Violations Since January of 2018).**

101. During a meeting with Piece Rate Employees that occurred In or around January of 2018, Scheiner acknowledged that Piece Rate Employees were entitled to overtime, and that going forward, New Galfab Defendants would pay overtime.

102. When a Piece Rate Employee asked if Scheiner's announcement meant that Piece Rate Employees would receive unpaid overtime as "back wages," Scheiner stated that Galfab would not pay "back wages."

103. Subsequently, New Galfab Defendants began paying Piece Rate Employees and those similarly-situated "overtime" for hours worked over 40 a week.

14

104.   Despite now purporting to pay overtime wages, New Galfab Defendants continued to violate the FLSA by failing to properly calculate or pay overtime to Piece Rate Employees.

105.   Since January of 2018, New Galfab Defendants have improperly calculated the overtime rate paid to Piece Rate Employees solely on the hourly rate Plaintiffs and those similarly-situated are paid to perform Non-Production Work, rather than on the actual regular rate of pay. *See, e.g*., 29 C.F.R. §§ 778.109, 778.111.

106.   Since January of 2018, New Galfab Defendants have improperly included *only the time spent performing piece rate work*, rather than all hours worked, when calculating the number of hours of overtime to which Piece Rate Employees are entitled.

107.   Thus, New Galfab Defendants' current process for paying overtime is to exclude time spent performing Non-Production Work from the calculation of hours worked, while arbitrarily using the Non-Production Work hourly rate as the regular rate for the purposes of calculating the overtime rate.

108.   At the time New Galfab Defendants implemented the overtime policies described in Paragraphs 99 - 105 above, they were aware of their overtime obligations and prior complaints by Piece Rate Employees regarding overtime pay.

109.   New Galfab Defendants and Scheiner willfully and recklessly violated the FLSA and continue to violate the FLSA despite the many complaints the have received from Piece Rate Employees and despite clearly applicable FLSA regulations.

110.   The FLSA violations of New Galfab Defendants and Scheiner were committed without good faith and/or were unreasonable.

## FACTS CONCERNING SUCCESSOR LIABILITY CLAIMS AGAINST NEW GALFAB DEFENDANTS

111.    Upon information and belief, several members of Wastebuilt Defendants' management, including Scheiner, were involved in and/or participated in the organization and formation of New Galfab Defendants.

112.    Scheiner and several other members of the former Wastebuilt Defendants' management were aware of the overtime complaints of Piece Rate Employees, to include those of Plaintiffs Kreischer, Yenna, and Epps, at the time involved in and/or participated in the organization and formation of New Galfab Defendants.

113.    At the time they were organized and formed, New Galfab Defendants were aware of Wastebuilt Defendants' obligations under the FLSA to Plaintiffs and those similarly-situated; they were also aware that Wastebuilt Defendants had violated the FLSA.

114.    There has been a substantial continuation of Galfab's business under the New Galfab Defendants.

115.    New Galfab Defendants retained the management of Wastebuilt Defendants, including Scheiner.

116.    New Galfab Defendants retained and use the same equipment Wastebuilt Defendants used to manufacture the same products Wastebuilt Defendants manufactured under the same name, "Galfab."

117.    New Galfab Defendants manufacture the same products Wastebuilt Defendants manufactured at the same Winamac and Phoenix plants Wastebuilt Defendants used to manufacture these products.

16

118.    New Galfab Defendants retained all of the Piece Rate Employees who were employed by Wastebuilt Defendants as of the date of the transition, who continued to perform the same job duties for New Galfab Defendants as they did for Wastebuilt Defendants.

119.    Upon information and belief, Galfab Acquisitions, LLC is no longer in existence and is unable to provide adequate relief to Plaintiffs and those similarly-situated.

## FACTS CONCERNING THE NAMED PLAINTIFFS

### (Plaintiff John Kreischer's Employment With Defendants)

120.    Wastebuilt Defendants employed Kreischer as a Piece Rate Employee from December of 2013 through December 31, 2017.

121.    Kreischer left his employment with Wastebuilt Defendants in or around May or June of 2016, but returned to working for Wastebuilt Defendants in or around November of 2016.

122.    Kreischer was employed by New Galfab Defendants from January 1, 2018 through April of 2018.

123.    The terms, conditions and circumstances of Kreischer's employment remained the same when his employment switched from Wastebuilt Defendants' control to New Galfab Defendants' control.

124.    Kreischer was not required to fill out any new employment forms or tax documents when he switched from being employed by Wastebuilt Defendants to New Galfab Defendants.

125.    Kreischer was never laid-off or unemployed during the switch from Wastebuilt Defendants to New Galfab Defendants.

126.    Kreischer performed the same job duties he had performed while employed by New Galfab Defendants as he had while employed by Wastebuilt Defendants.

127.    At all times referenced herein, Kreischer was not exempt from the overtime requirements of the FLSA.

128.    At all times referenced herein, Kreischer was paid a piece rate for all time he spent manufacturing Defendants' products, and an hourly rate for time he was not producing products but nonetheless required to work.

129.    At all times referenced herein, Kreischer regularly worked in excess of (40) hours per workweek, but never received one and one-half times his regular rate of pay for any hours worked over (40) in a workweek the entire time he was employed by Wastebuilt Defendants.

130.    Kreischer continued to work in excess of 40 hours per week after becoming employed by New Galfab Defendants.

131.    New Galfab Defendants did not pay the correct overtime to Kreischer and did not pay Kreischer for all overtime worked.

**(Plaintiff Henry Epps' Employment With Defendants)**

132.    Wastebuilt Defendants employed Epps as a Piece Rate Employee from approximately May 8, 2017 through December 31, 2017.

133.    Beginning on or around January 1, 2018, Epps became employed by New Galfab Defendants.

134.    The terms, conditions and circumstances of Epps employment remained the same when his employment switched from Wastebuilt Defendants' control to New Galfab Defendants' control.

135.    Epps did not have to apply for employment with New Galfab Defendants.

136.    Epps was not required to fill out any new employment forms or tax documents when he switched from being employed by Wastebuilt Defendants to New Galfab Defendants.

137.    Epps was never laid-off or unemployed during the switch from Wastebuilt Defendants to New Galfab Defendants.

138.    Epps performs the same job duties for New Galfab Defendants as he did while employed by Wastebuilt Defendants.

139.    Epps had the same manager after his employment transitioned from Wastebuilt Defendants to New Galfab Defendants.

140.    At all times referenced herein, Epps was not exempt from the overtime requirements of the FLSA.

141.    At all times referenced herein, Epps was paid a piece rate for all time he spent manufacturing Defendants' products, and an hourly rate for time he was not producing products but nonetheless required to work.

142.    At all times referenced herein, Epps regularly worked in excess of (40) hours per workweek, but never received one and one-half times his regular rate of pay for any hours worked over (40) in a workweek the entire time he was employed by Wastebuilt Defendants.

143.    Epps continued to work in excess of 40 hours per week after becoming employed by New Galfab Defendants.

144.    New Galfab Defendants now pay Epps overtime; however, New Galfab Defendants do not pay the correct overtime rate nor do they pay Epps for all overtime worked.

145.    As of the filing of this Complaint, New Galfab Defendants' violations of the FLSA as to Epps are ongoing and are continuing to cause Epps to suffer damages.

### (Plaintiff Curley Conley's Employment With Defendants)

146.    Wastebuilt Defendants employed Conley as a Piece Rate Employee from approximately June 21, 2017 through December 31, 2017.

147.    Beginning on or around January 1, 2018, Conley became employed by New Galfab Defendants.

148.    The terms, conditions and circumstances of Conley's employment remained the same when his employment switched from Wastebuilt Defendants' control to New Galfab Defendants' control.

149.    Conley did not have to apply for employment with New Galfab Defendants.

150.    Conley was not required to fill out any new employment forms or tax documents when he switched from being employed by Wastebuilt Defendants to New Galfab Defendants.

151.    Conley was never laid-off or unemployed during the switch from Wastebuilt Defendants to New Galfab Defendants.

152.    Conley performs the same job duties for New Galfab Defendants as he did while employed by Wastebuilt Defendants.

153.    Conley had the same manager after his employment transitioned from Wastebuilt Defendants to New Galfab Defendants.

154.    At all times referenced herein, Conley was not exempt from the overtime requirements of the FLSA.

155.    At all times referenced herein, Conley was paid a piece rate for all time he spent manufacturing Defendants' products, and an hourly rate for time he was not producing products but nonetheless required to work.

156.    At all times referenced herein, Conley regularly worked in excess of (40) hours per workweek, but never received one and one-half times his regular rate of pay for any hours worked over (40) in a workweek the entire time he was employed by Wastebuilt Defendants.

157.    Conley continued to work in excess of 40 hours per week after becoming employed by New Galfab Defendants.

158.    New Galfab Defendants now pay Conley overtime; however, New Galfab Defendants do not pay the correct overtime rate nor do they pay Conley for all overtime worked.

159.    As of the filing of this Complaint, New Galfab Defendants' violations of the FLSA as to Conley are ongoing and are continuing to cause Conley to suffer damages.

**(Plaintiff Thomas Nelsen's Employment With Wastebuilt Defendants)**

160.    Wastebuilt Defendants employed Nelsen as a Piece Rate Employee from approximately April 24, 2014 through February of 2016.

161.    At all times referenced herein, Nelsen was not exempt from the overtime requirements of the FLSA.

162.    Nelsen was paid a piece rate for all time he spent manufacturing Defendants' products, and an hourly rate for time he was not producing products but nonetheless required to work.

163.    During all times relevant to this Complaint, Nelsen regularly worked in excess of (40) hours per workweek, but never received one and one-half times his regular rate of pay for any hours worked over (40) in a workweek the entire time he was employed by Wastebuilt Defendants.

**(Plaintiff Jason Yenna's Employment With Defendants)**

164.    Wastebuilt Defendants employed Yenna as a Piece Rate Employee from approximately November 22, 2016 through December 31, 2017.

165.    Beginning on or around January 1, 2018, Yenna became employed by New Galfab Defendants.

166.    The terms, conditions and circumstances of Yenna's employment remained the same when his employment switched from Wastebuilt Defendants' control to New Galfab Defendants' control.

167.    Yenna did not have to apply for employment with New Galfab Defendants.

168.    Yenna was not required to fill out any new employment forms or tax documents when he switched from being employed by Wastebuilt Defendants to New Galfab Defendants.

169.    Yenna was never laid-off or unemployed during the switch from Wastebuilt Defendants to New Galfab Defendants.

170.    Yenna performs the same job duties for New Galfab Defendants as he did while employed by Wastebuilt Defendants.

171.    Yenna had the same manager after his employment transitioned from Wastebuilt Defendants to New Galfab Defendants.

172.    At all times referenced herein, Yenna was not exempt from the overtime requirements of the FLSA.

173.    At all times referenced herein, Yenna was paid a piece rate for all time he spent manufacturing Defendants' products, and an hourly rate for time he was not producing products but nonetheless required to work.

174.    At all times referenced herein, Yenna regularly worked in excess of (40) hours per workweek, but never received one and one-half times his regular rate of pay for any hours worked over (40) in a workweek the entire time he was employed by Wastebuilt Defendants.

175.    Yenna continued to work in excess of 40 hours per week after becoming employed by New Galfab Defendants.

176. New Galfab Defendants now pay Yenna overtime; however, New Galfab Defendants do not pay the correct overtime rate nor do they pay Yenna for all overtime worked.

177. As of the filing of this Complaint, New Galfab Defendants' violations of the FLSA as to Yenna are ongoing and are continuing to cause Yenna to suffer damages.

**(Plaintiff James Galbreath's Employment With Defendants)**

178. Wastebuilt Defendants employed Galbreath as a Piece Rate Employee from approximately November 22, 2016 through December 31, 2017.

179. Beginning on or around January 1, 2018, Galbreath became employed by New Galfab Defendants.

180. The terms, conditions and circumstances of Galbreath's employment remained the same when his employment switched from Wastebuilt Defendants' control to New Galfab Defendants' control.

181. Galbreath did not have to apply for employment with New Galfab Defendants.

182. Galbreath was not required to fill out any new employment forms or tax documents when he switched from being employed by Wastebuilt Defendants to New Galfab Defendants.

183. Galbreath was never laid-off or unemployed during the switch from Wastebuilt Defendants to New Galfab Defendants.

184. Galbreath performs the same job duties for New Galfab Defendants as he did while employed by Wastebuilt Defendants.

185. Galbreath had the same manager after his employment transitioned from Wastebuilt Defendants to New Galfab Defendants.

186. At all times referenced herein, Galbreath was not exempt from the overtime requirements of the FLSA.

187.   At all times referenced herein, Galbreath was paid a piece rate for all time he spent manufacturing Defendants' products, and an hourly rate for time he was not producing products but nonetheless required to work.

188.   At all times referenced herein, Galbreath regularly worked in excess of (40) hours per workweek, but never received one and one-half times his regular rate of pay for any hours worked over (40) in a workweek the entire time he was employed by Wastebuilt Defendants.

189.   Galbreath continued to work in excess of 40 hours per week after becoming employed by New Galfab Defendants.

190.   New Galfab Defendants now pay Galbreath overtime; however, New Galfab Defendants do not pay the correct overtime rate nor do they pay Galbreath for all overtime worked.

191.   As of the filing of this Complaint, New Galfab Defendants' violations of the FLSA as to Galbreath are ongoing and are continuing to cause Galbreath to suffer damages.

### (Plaintiff Brian Buckman's Employment With Defendants)

192.   Wastebuilt Defendants employed Buckman as a Piece Rate Employee from approximately November 22, 2016 through December 31, 2017.

193.   Beginning on or around January 1, 2018, Buckman became employed by New Galfab Defendants.

194.   The terms, conditions and circumstances of Buckman's employment remained the same when his employment remained the same when his employment switched from Wastebuilt Defendants' control to New Galfab Defendants' control.

195.   Buckman did not have to apply for employment with New Galfab Defendants.

196.   Buckman was not required to fill out any new employment forms or tax documents when he switched from being employed by Wastebuilt Defendants to New Galfab Defendants.

197.    Buckman was never laid-off or unemployed during the switch from Wastebuilt Defendants to New Galfab Defendants.

198.    Buckman performs the same job duties for New Galfab Defendants as he did while employed by Wastebuilt Defendants.

199.    Buckman had the same manager after his employment transitioned from Wastebuilt Defendants to New Galfab Defendants.

200.    At all times referenced herein, Buckman was not exempt from the overtime requirements of the FLSA.

201.    At all times referenced herein, Buckman was paid a piece rate for all time he spent manufacturing Defendants' products, and an hourly rate for time he was not producing products but nonetheless required to work.

202.    At all times referenced herein, Buckman regularly worked in excess of (40) hours per workweek, but never received one and one-half times his regular rate of pay for any hours worked over (40) in a workweek while he was employed by Wastebuilt Defendants.

203.    Buckman continued to regularly work in excess of 40 hours per week after becoming employed by New Galfab Defendants.

204.    New Galfab Defendants now pay Buckman overtime; however, New Galfab Defendants do not pay the correct overtime rate nor do they pay Buckman for all overtime worked.

205.    As of the filing of this Complaint, New Galfab Defendants' violations of the FLSA as to Buckman are ongoing and are continuing to cause Buckman to suffer damages.

### (Plaintiff William Box's Employment With Defendants)

206.    Wastebuilt Defendants employed Box as a Piece Rate Employee from approximately October of 2016 through December of 2016.

207. Kreischer was employed by New Galfab Defendants from January 1, 2018 through March of 2018.

208. The terms, conditions and circumstances of Box's employment stayed the same when Box's employment remained the same when his employment switched from Wastebuilt Defendants' control to New Galfab Defendants' control.

209. Box was not required to fill out any new employment forms or tax documents when he switched from being employed by Wastebuilt Defendants to New Galfab Defendants.

210. Box was never laid-off or unemployed during the switch from Wastebuilt Defendants to New Galfab Defendants.

211. Box performed the same job duties he had performed while employed by New Galfab Defendants as he had while employed by Wastebuilt Defendants.

212. At all times referenced herein, Box was not exempt from the overtime requirements of the FLSA.

213. At all times referenced herein, Box was paid a piece rate for all time he spent manufacturing Defendants' products, and an hourly rate for time he was not producing products but nonetheless required to work.

214. At all times referenced herein, Box regularly worked in excess of (40) hours per workweek, but never received one and one-half times his regular rate of pay for any hours worked over (40) in a workweek the entire time he was employed by Wastebuilt Defendants.

215. Box continued to work in excess of 40 hours per week after becoming employed by New Galfab Defendants.

216. New Galfab Defendants did not pay the correct overtime to Box and did not pay Kreischer for all overtime worked.

### THIS CASE IS APPROPRIATE FOR COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)

217.    Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

218.    Plaintiffs bring this as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all similarly-situated individuals who are part of the following two classes:

> a.  **Galfab Acquisitions/Wastebuilt Piece Rate Employees:** all persons who were employed by Galfab Acqusitions, LLC and/or Wastebuilt Environmental Solutions at any time during the three years preceding the filing of this Complaint through December 31, 2017, who were paid a piece rate and not paid overtime for all hours worked over forty (40) for any given week;

> b.  **Galfab, LLC/ Galfab Holdings, LLC Piece Rate Employees:** all persons who were employed by Galfab LLC and/or Galfab Holdings, LLC at any time since January 1, 2018, who were paid a piece rate and not paid overtime for all hours worked over forty (40) for any given week and/or who were not paid the proper overtime rate.

These individuals are referred to as the "FLSA Class" or "FLSA Class Members."

219.    Most former employees of Wastebuilt Defendants continued their employment with New Galfab Defendants; thus, several of the Plaintiffs and members of the putative class are eligible to join both classes.

220.    Collective Action treatment of Plaintiffs' FLSA claims is appropriate because Plaintiffs and the FLSA Class have been subjected to the common business practices referenced in Paragraph 53 -108, *supra*, and the success of their claims depends on the resolution of common issues of law and fact, including, *inter alia*, whether Defendants' companywide practices failed to properly compensate the FLSA Class Members for all hours worked.

### COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT

221.    Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

222. During all times material to this Complaint, Plaintiffs and the FLSA Class Members were not exempt from receiving minimum wage or overtime under the FLSA because, *inter alia*, they were not "executive," "computer," "administrative," or "professional" employees, as those terms are defined under the FLSA. See 29 C.F.R. §§ 541.0, et seq.

223. During all times material to this Complaint, Defendants violated the FLSA with respect to the Plaintiffs and the FLSA Class Members by, *inter alia*, failing to compensate them at time-and-one-half their regular rates of pay for any hours worked in excess of forty (40) hours per workweek.

224. During all times material to this complaint, Defendants knew that Plaintiffs and the FLSA Class Members are not exempt from the minimum wage and overtime obligations imposed by the FLSA. Defendants also knew that they were required to pay Plaintiffs and the FLSA Class Members at least the applicable minimum wage, plus overtime compensation at a rate of one and one-half their respective regular rates for hours worked in excess of forty (40) hours per workweek. Despite such knowledge, Defendants willfully withheld and failed to pay the minimum wage and overtime compensation to which Plaintiffs and the FLSA Class Members are entitled.

225. In violating the FLSA, Defendants acted willfully, without a good faith basis and in reckless disregard of clearly applicable FLSA provisions.

226. As a direct and proximate cause of Defendants' conduct, pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiffs and those similarly-situated for the full amount of the required minimum wage rate, an additional equal amount as liquidated damages as well as costs and reasonable attorney fees.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs request judgment against all Defendants and for an Order:

(a) Certifying a collective action pursuant to 29 U.S.C. § 216(b) consisting of all individuals as described in Paragraphs 205(a) and (b) of the Complaint;

(b) Awarding to Plaintiffs and the FLSA Class Members unpaid wages as to be determined at trial together with any liquidated damages allowed by FLSA;

(c) Awarding Plaintiffs and the FLSA Class Members costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses;

(d) Awarding Plaintiffs and the FLSA Class Members such other and further relief as the Court deems just and proper;

(e) For a judgment against Defendants for all damage, relief, or any other recovery whatsoever.


Dated: June 12, 2018                              Respectfully submitted,

Elizabeth A. Thompson, Esq.                       JOHN KREISCHER, HENRY EPPS,
Sharilee K. Smentek, Esq.                         WILLIAM BOX, JASON YENNA,
Saul, Ewing, Arnstein & Lehr LLP                  THOMAS NELSON, CURLEY CONLEY,
161 North Clark, Suite 4200                       BRIAN BUCKMAN and JAMES
Chicago, Illinois 60601                           GALBREATH, on behalf of themselves and
Phone: (312) 876-7185                             all others similarly situated
Fax: (312) 876-0288
Email: elizabeth.thompson@saul.com                */s/ Elizabeth A. Thompson*
        sharilee.smentek@saul.com                 One of their attorneys

*Local Counsel for Plaintiffs*

Brian D. Spitz, *pending pro hac vice admission*
Chris P. Wido, *pending pro hac vice admission*
THE SPITZ LAW FIRM, LLC
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
        chris.wido@spitzlawfirm.com

*Attorneys for Plaintiffs*